IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| E.I. DUPONT DE NEMOURS AND COMPANY,<br><br>                Plaintiff,<br><br>   v.<br><br>UNIFRAX I LLC,<br><br>               Defendant. | Civil Action No. 14-1250-RGA |

### ORDER ON MOTIONS *IN LIMINE*

PMIL #1. (D.I. 279, Exh. 17). **DENIED** without prejudice to timely objection to specific testimony at trial.

Plaintiff argues that Defendant should be precluded from introducing expert testimony relating to the development history of Defendant's products because the proposed testimony amounts to an argumentative recitation of Defendant's version of the facts. Plaintiff is primarily concerned with Defendant's experts acting as "omniscient narrators." (Tr. 42:12–18). While Plaintiff's concern has some merit in the abstract, I am not sure what the practical implications are of a blanket prohibition on "argumentative recitations" of fact. Plaintiff points to five examples where Mr. Haber lays out "argumentative paragraphs of so-called factual summaries in which Haber lays out Unifrax's position on the development and reduction to practice of its 3G7 product." (D.I. 279 at 327). Depending on how this information is presented at trial, it may or may not be "argumentative." Sometimes the way the expert writes a report is not actually how the direct testimony is going to come out. Furthermore, it appears that the five examples appear to be adequately supported by citations and appear to be relevant to Defendant's invalidity case.

1

(See *id.* at pp. 341 ¶ 67, 346–47 ¶¶ 45–46). Out of caution, I prefer to address this issue in the context of the actual trial testimony.

DMIL #1. (D.I. 279, Exh. 18). **GRANTED-IN-PART** and **DENIED-IN-PART**.

Defendant argues that because Plaintiff admits that it does not itself make or sell an embodying product, it should not be heard to argue the contrary to the jury. It does not appear that Plaintiff itself makes or sell an embodying product. (*See id.* at pp. 357–58 ("DuPont has helped to market the Insulfab 2518 product, but it has not sold it or offered it for sale.")). Thus, Defendant's motion *in limine* is granted to this extent. To be clear, this does not necessarily preclude Plaintiff from saying that some other entity makes or sells an embodying product.

Defendant further seeks to preclude Plaintiff from arguing or eliciting evidence that Insulfab 2518 is a commercial embodiment of the patent-in-suit because Plaintiff has not disclosed any factual predicate to support its contention. Defendant's request is denied in this regard. Plaintiff adequately shows that Insulfab 2518 practices the asserted claims through (1) the testimony of DuPont's inventors based on their personal knowledge and documentary evidence, (2) DuPont's expert's report, and (3) other documentation.

For example, both of DuPont's inventors were asked whether Insulfab 2518 practices the patent, and there is testimony that it does. (*See, e.g.*, D.I. 279 at 383, 229:6–12). DuPont's technical expert opines that Insulfab 2518 practices the patent claims and that there was a nexus between its commercial success and the patented invention. (*Id.* at 494–95). The product data sheet for Insulfab 2518 also suggests that Insulfab 2518 contains the required layers. (*Id.* at 415). Defendant's various arguments criticizing this evidence go to its weight rather than its admissibility. (*Id.* at 635).

DMIL #2. (D.I. 279, Exh. 19). **GRANTED**.

Defendant seeks to preclude Plaintiff from presenting any argument or evidence of copying. Plaintiff argues that evidence of copying is relevant to show that (1) under pre-AIA 35 U.S.C. § 102(g), Unifrax did not conceive of the invention but instead copied what DuPont did, and (2) to rebut Unifrax's argument that its alleged near simultaneous invention of the technology is a secondary consideration of obviousness. (D.I. 279 at 695).[1]

Plaintiff argues the following events took place. (*Id.* at 696–97). Plaintiff conceived of the invention in late 2009 and reduced it to practice multiple times in the spring of 2010, and certainly no later than August 3, 2010. Around January of 2010, Boeing asked DuPont and Unifrax (among other suppliers) to come up with a new flame-barrier laminate that met Boeing's needs. (*Id.* at 732–33). In June 2010, Unifrax said it was "running out of time." Unifrax's citations show at most that in July 2010, Unifrax thought vermiculite was a potential approach for its "3G" project. George Danker, a Unifrax sales person, led competitive-intelligence operations, including "trying to get information about the competitor's products." He tried to convince the technical team to source vermiculite in August 2010. The idea to use vermiculite came to him after he organized a "wingnut" competitive intelligence gathering initiative. This occurred to him after Unifrax discussed a knock-off submission to Boeing.

Even assuming that evidence of copying is relevant to pre-AIA 35 U.S.C. § 102(g) or as rebuttal evidence for "near simultaneous invention" as a secondary consideration of obviousness, the probative value of the evidence Plaintiff proffers is very thin. (*See id.* at 696–97). There is no direct evidence that Unifrax copied from DuPont. There is a dearth of circumstantial evidence that Unifrax derived the idea of using vermiculite from DuPont. There is no evidence

---

[1] Plaintiff also argues that copying shows willfulness. (D.I. 279 at 695). This point is moot in light of my decision denying Plaintiff's motion for leave to amend its complaint to add willfulness.

3

that Danker actually gathered information from DuPont. There is no evidence that Danker's idea for using vermiculite was from DuPont. Even assuming Unifrax discussed a "knock-off" submission to Boeing, there is little reason to conclude it related to DuPont's product. (*Id.* at 649 (referencing a "Cogebi knock-off")). The "competitive intelligence" evidence is vague and speculative. Plaintiff's case is made even weaker by Unifrax's evidence. Unifrax offers documents suggesting that it conceived of and worked on flame barriers that included vermiculite by at least early August 2010. (*See, e.g., id.* at 668, 678).

Meanwhile the prejudicial nature of the proffered evidence is substantial. DuPont does not argue that Unifrax's "competitive intelligence" was illegal in any way. This evidence would also likely confuse the jury's analysis of infringement. *See Personalized User Model, L.L.P. v. Google Inc.*, 2014 WL 807736, at *4 (D. Del. Feb. 27, 2014).

The probative value of this evidence is substantially outweighed by the dangers of unfair prejudice and jury confusion. *See* Fed. R. Evid. 403. Defendant's request is therefore granted.

**IT IS SO ORDERED** this 5 day of May, 2017.

/s/ Richard G. Andrews
United States District Judge